Case 5—INDICTMENT—September 19.

# Louisville Courier-Journal Co. v. Commonwealth.

APPEAL FROM WARREN CIRCUIT COURT.

A Person Who Advertises a Lottery Scheme Conducted in Another State, or the sale of tickets in such a lottery, is not guilty of a violation of section 5, article 23, chapter 29, General Statutes, unless, by the advertisement, he indicates where the tickets may be obtained in this State.

F. HAGAN for appellant.

1. The statute denounces the advertising of lottery tickets for sale in this State and not the advertising of lottery tickets for sale outside the State. (Gen. Stats., chap. 29, art. 23, sec. 5.)
2. The indictment is defective in that it does not set out the words of the advertisement.
3. The charge that defendant advertised a lottery called the "Louisiana State Lottery" is not sustained by proof of the advertisement of a lottery called the "Louisiana State Lottery Company." (Hensley v. Commonwealth, 1 Bush, 11; 2 Eng. C. C., 303; Roscoe, 107, 433; 2 Russell, 788, 789; 1 Wharton's Criminal Law, secs. 250–259 and 595; McGay v. The People, 45 N. Y., 153; 1 Greenleaf on Evidence, sec. 76.)
4. The Louisiana Lottery is legal under the Constitution of Louisiana and the Constitution of the United States, and therefore, it is not an offense to publish it.

NAT. A. PORTER for appellee.

The indictment is good. The statute forbids the advertisement, by printing or otherwise, of lotteries and lottery tickets of all kinds whether the lottery is located within or out of the State. (Acts, 1869, vol. 1, p. 185; Gen. Stats., chap. 29, art. 23, secs. 1–6; Criminal Code, sec. 125; Sims v. Sims, 75 N. Y.; Bishop on Statutory Crimes, secs. 205, 356 and 950.)

CHIEF JUSTICE HOLT delivered the opinion of the court.

The appellant, the Courier-Journal Company, was indicted for advertising the Louisiana State Lottery and

the sale of its tickets under chapter 29, article 23, section 5, which provides:

" Whoever shall advertise or give public notice of any lottery, ticket or other thing mentioned in the last two sections, being for sale or exchange, or set up or exhibit any sign, symbol or other representation of a lottery, or the drawing of a lottery, indicating where the same may be bought or obtained in this State, shall incur the like penalty as in those sections named."

The indictment does not, as would have been the better plan, set out the advertisement *in hæc verba ;*. nor does it, in setting forth the acts constituting the offense, aver that the advertisement showed that the tickets could be obtained in this State.   The question is therefore presented, whether under the statute, which being penal must be strictly construed but not so much so as to defeat the purpose of its enactment, a person who advertises a lottery, which is conducted in another State, or the sale of its tickets, is guilty of a violation of the statute, unless the advertisement indicates where the tickets may be bought or obtained in this State ?   In brief, do the words " indicating where the same may be bought or obtained *in this State*," limit the entire preceding part of the section to acts done in this State? . The appellant contends they do ; while the appellee insists that they only apply to the setting up or exhibiting of a " sign, symbol or other representation of a lottery, or the drawing of a lottery."   The language of the statute is by no means so plain as to place its meaning beyond dispute.

The Legislature may not only forbid the operation of lotteries in this State, but the sale in this State of the tickets of a lottery conducted in another State.   This has

been done by the preceding sections of our statute; and this to some extent serves to show that the words " in this State," were intended to limit its operation to advertisements of the sale of tickets in this State. The words " where the same may be bought or obtained in this State," certainly refer to the tickets of the lottery, and therefore to the first clause of the section, because they are not named in the second one; but they were doubtless intended to apply to both.

It is urged that it can not well be supposed the Legislature intended to protect the people of this State from a home lottery, and yet allow them to be subjected to the temptations of a foreign one; and that it therefore intended to forbid the advertisement of all lotteries whether located in or out of the State, and the sale of the tickets, whether within or without the State.

The claim upon the other side, however, that it was only intended to forbid the advertisement of a lottery conducted within the State, and the traffic in lottery tickets within the State, whether those of a home or foreign lottery, is not without reason to support it. This is an age of newspapers. In this country they circulate everywhere. They wield an influence beyond estimate. They are not confined to the locality where they are published. They go to all parts of the country and into every workshop and home in the land. The newspapers of one Commonwealth are daily read in other Commonwealths of this country. Perhaps where one is published lotteries are allowed, as is the case in Louisiana. Perhaps there they are legalized and promoted by legislative aid and it is entirely legitimate for the newspapers published there to advertise their existence and the traffic in their

tickets. Those very papers circulate in our State and are daily read here. Their exclusion would not be advisable or practical.

Our Legislature, doubtless, did not intend to subject their publishers to prosecution every time one of their papers containing a lottery advertisement circulated in this State; and it may have thought it would be unwise to discriminate in favor of them and against our own press, but that it would be best, as is no doubt true, to go so far at least as to forbid the advertisement of any lottery located in this State, and the traffic within our State in lottery tickets whether those of a home or foreign lottery.

We must, however, enforce the law as we find it. It is not for us to determine what would be the best policy; and we allude to the matter only by way of showing that the Legislature may have been moved to enact the statute, as we understand it, for the reason indicated.

Both from its language and the light afforded by its context, it seems to us it denounces the advertisement of lottery tickets being for sale in this State, and not the advertisement of the existence of a lottery out of this State and the sale of its tickets elsewhere than in this State. The advertisement must show where the tickets may be obtained in this State, and the indictment must aver it. This indictment is, therefore, defective, and the judgment is reversed with directions to sustain the demurrer to it.