STATE, Plaintiff-Appellee, v. SCHWABIE, Defendant-Appellant.
STATE, Plaintiff-Appellee, v. SIMMONS, Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

Nos. 21120, 21122.   Decided December 6, 1948.

Roger A. Zucker, Cleveland, for plaintiff-appellee.

G. A. Doyle, Cleveland, for defendant-appellant Schwabie.

Robt. H. Sanborn, Cleveland, for defendant-appellant Simmons.

## OPINION

By HURD, PJ.

These cases come before this court on appeal on questions of law from the police court of the city of Cleveland Heights where the defendants appellants were found guilty of violating the provisions of §13067 GC.

While these appeals were presented and argued separately, we are considering them together because on the facts the same primary question of law arises for our determination in each case. This question may be phrased thusly:

Does the mere printing of a lottery ticket or a result sheet by a printer, without any **distribution, advertisement** or **publication** thereof, constitute a violation of §13067 GC?

The pertinent part of the affidavit charging Schwabie, reads:—

"For unlawfully printing an account of certain lotteries and schemes of chance, stating when and where said lotteries and schemes of chance were to be drawn and did print an

account of the prizes therein and the price of the lottery tickets and tickets for such schemes of chance and did print an account giving publicity to said lotteries and schemes of chance contrary to the form of the statute."

The evidence shows that the defendant, Schwabie, operates a printing shop in the basement of his home at 2836 Mayfield Road, Cleveland Heights, Ohio. On Feb. 6, 1948, certain officers of the city requested permission to go into the basement, whereupon the defendant accompanied by the officers went to the basement where the defendant had been engaged in repairing a motor. They found there two or three power-fed printing presses, a folding machine and three stitching machines. They also found certain material, including tickets for a drawing at a church in Solon, Ohio; lottery tickets, books of lottery tickets, chases containing cuts for the printing of lottery tickets and result sheets and copies of invoices on the billheads of defendant. During the course of the trial an officer testified in part as follows:

"A. I asked Schwabie if he was printing tickets and he said 'No.' He said 'You know better than that.' I said, 'You were printing last week Fred.' He said, 'No' He said 'I got out of that a long time ago.'"

Considering this and all the evidence in Schwabie's case as shown by the record, we think that the trial court could find by inference from the circumstances that the defendant had previously printed the material found in his shop, the time of so doing being uncertain, and that if this constituted a violation of the statute the finding of guilty should be sustained. However, there is in the record no evidence showing any publication, distribution or circulation by defendant of the printed material in question, and if these elements are necessary to constitute a violation, the judgment should be reversed.

The pertinent parts of the affidavit charging Simmons read:

"did unlawfully print an account of certain lotteries and schemes of chance know as 'Universal' stating where such lotteries and schemes of chance were to be drawn and did print an account of the prizes therein and the price of the lottery tickets and the tickets for said scheme of chance contrary to the form of the statute * * *."

The evidence in the Simmons case shows that on the 10th of March, 1948, certain officers of the city went to the place of business of the defendant and confiscated a lot of material found therein, some belonging to the defendant and some belonging to other persons.

The state introduced in evidence exhibits consisting of photographs of the business place of the defendant portraying among other things printing machinery, folding and stitching machines. For the rest, the evidence introduced in the trial of Simmons was substantially of the same character and to the same general effect as in Schwabie's case and our observations and conclusions in respect of the evidence in the Schwabie case are equally applicable in the Simmons case.

We come now to a consideration of the question above posed as to whether or not the mechanical printing of lottery and result tickets constitutes a violation of §13067 GC, which interdicts the **writing, printing and publishing of an account of a lottery or scheme of chance,** stating therein the place of the drawing, the prizes to be given, or the price of the ticket, or showing where a ticket may be purchased. The statute is as follows:

"**Sec. 13067 GC.** ADVERTISING LOTTERIES. Whoever **writes, prints or publishes an account of a lottery or scheme of chance** by whatsoever name, style or title denominated or known, stating when or where it is to be or has been drawn, or the prizes therein, or any of them, or the price of the ticket, or showing where a ticket may be or has been obtained, or **giving publicity** to such lottery or scheme of chance, **shall be** fined not more than five hundred dollars or imprisoned in jail not more than six months, or both."

The first principle in construing penal statutes is that a rule of strict construction applies. Penal statutes and ordinances cannot be extended by construction or by implication to persons or things not coming within the express terms of the statute.

Directly in point are the following authorities:

**State of Ohio, appellee v. Associates Investment Co., 136 Oh St 456. Syllabus 1:**

"Penal statutes are strictly construed. Where a statute defining an offense designates one class of persons as subject to its penalty, all other persons are deemed to be exempted therefrom."

At page 458 the court said:

"The rules of construction to be applied to the terms and provisions of criminal statutes are so clearly stated and so well established as to scarcely require repetition or the citation of authority to support them. As stated in 2 Sutherland on Statutory Construction (2 Ed) 963, Sec. 520.

'That penal statutes are to be strictly construed has become a maxim of the law, affirmed and illustrated by innumerable cases * * *. Nothing is to be regarded as included within them that is not within their letters as well as their spirit; nothing that is not clearly and intelligibly described in the very words of the statute, as well as manifestly intended by the legislature'.

"We need go no further than the decisions of our own court for cases in point. The gist of these decisions is stated in 12 O. Jur. 55, Sec. 12, where supporting decisions are cited."

See also: 12 O. Jur. p. 53, 12, Construction of Penal Statutes:

"It is well established rule that penal statutes must be strictly construed and the rule is jealously guarded. The rule of strict construction applies to words defining an offense and prescribing punishment whether found in a statute or an ordinance or a by-law."

Additional authorities to the same effect are:
City of Cleveland v. Jorski, 142 Oh St 529; In re Moreno and In re Lunce 83 Oh Ap 54.

In the light of these applicable principles of law, we come now to a construction of the statute and its application to the facts herein. A break-down of the statute into its compenent parts grammatically may be made as follows:

"Whoever writes, prints or publishes an account of a lottery or scheme of chance by whatsoever name, style or title denominated or known * * * shall be fined, etc."

The words 'stating when or where it is to be or has been drawn, or the prizes therein, or any of them, or the price of the ticket, or showing where a ticket may be or has been obtained' apply to and modify the words 'an account'. The words 'giving publicity to such lottery or scheme of chance' emphasize the intention of the legislature to prohibit by law the publishing of an account or report or information which would have the effect of aiding or assisting any lottery or

scheme of chance, by advertising or giving notice of the time or place thereof through newspaper or other media of information. The obvious intent and purpose of the legislature in the enactment of the statute, was to prevent the publication of news or information of any kind which would serve to promote or aid lotteries and schemes of chance by whatever name denominated. This view is further emphasized by the title of the statute which is "ADVERTISING LOTTERIES."

Sec. 13068 GC, the next succeeding section, serves further to support this view as being the only reasonable and logical construction. It reads as follows:

"Sec. 13068 GC: Venue: A person violating any provision of the next preceding section shall be liable to prosecution in each county **where such publication was circulated** by him." (Emphasis added.)

Thus it is incontrovertible in our opinion that the gravamen of the offense is in the writing, printing or publishing **an account** of a lottery or scheme of chance. Giving to the language employed its plain and ordinary meaning, the intendment is to prohibit publication of the facts concerning a lottery or the advertising of facts concerning a lottery.

We come now to a consideration of the reported cases on this subject. We have examined many cases and many have been cited to us, all of which support our view. We find none contra nor have any been cited to us. While apparently there are no cases in Ohio directly in point, we find cases in other state jurisdictions having comparative statutes which by analogy support our view that the sole purpose of this statute is to interdict the publication of news concerning lotteries. Peculiarly enough, all of the cases we have examined have to do with newspaper accounts or advertisements except one which has to do with a billboard advertisement.

These statutes interdicting the publication of accounts of lotteries are of ancient vintage and the wording thereof indicates that one state copied from another. This provision of the code has long been a part of the statutory law of Ohio, having been included in the Revised Statutes as §6929 GC. These statutes were originally enacted long before the days of radio and television, but undoubtedly transmission of news or information by these media would come under the ban of the statute.

The State of Indiana has a comparative statute reading in part as follows:

"Lottery: Advertising: Whoever writes, prints, advertises or publishes in any way an account of any lottery * * * stating

when or where the same is to be drawn, what prizes are in or any of them are, or the price of the ticket or showing therein where any ticket may be obtained or in any way giving **publicity** to such lottery, gift, enterprize or scheme of chance * * *."

It was held in the case of State v. Bailey, 183 Ind. 215, syllabus 1 and 2 as follows:

"Lotteries: Statutes: Advertising Suit Club: The gravamen of the offense defined by Sec. 2465, Burns 1914, Acts 1905, p. 584, Sec. 556 is the advertising of and giving publicity to a contemplated lottery, gift enterprise or scheme of chance; hence the advertisement of a suit club, to be conducted in such a way as to constitute either a lottery, gift enterprise or a scheme of chance, would constitute a violation of the statute, although there is nothing in the advertisement to indicate that the club is a lottery, gift enterprise or scheme of chance.
2. Lotteries: Unlawful Advertising—'suit club.' There mere advertisement of a suit club without any indication that it is a lottery, gift enterprise or scheme of chance, would not of itself constitute a violation of Sec. 2465 Burns 1914, Acts 1905, p. 584, Sec. 556, since the term 'suit club' is comprehensive enough to include something wholly legitimate and outside the prohibition of the statute."

The State of Massachusetts likewise has a comparative statute entitled "**Advertising Lottery Ticket.**"

"Whoever himself or by another advertises a lottery ticket or a share of such ticket for sale * * * shall be guilty as the law provides."

It was held in Commonwealth v. Clapp, 22 Mass. 41:

"The printer of a newspaper in which an advertisement of lottery tickets is inserted is liable to indictment under this section."

It was held in Commonwealth v. Hooper, 22 Mass. 42:

"A signboard erected at a person's place of business giving notice that lottery tickets are for sale there is an advertisement within the meaning of this section."

The State of Kentucky has a comparative statute which reads in part as follows:

"Whoever shall advertise or give public notice to any lottery, ticket or other thing mentioned * * * being for sale or exchange or set up or exhibit any sign, symbol or other representation of a lottery or drawing of a lottery, indicating where the same may be bought or obtained * * * shall incur like penalty * * *."

In construing this statute, the supreme court of the State of Kentucky in the case of Louisville Courier Journal Co. v. Commonwealth, 92 Ky. 22, found the defendant not guilty and in part of the opinion uses these words:

"The advertisement must show where tickets may be obtained in the state and any indictment must aver it."

A New York case cited by counsel entitled "Jos. Hart and another plaintiffs in error, v People of the State of New York, 26 Hun Rep. 396 involving a comparative statute, decided Jan. 1882, supports our theory of construction in the present case. The statute under consideration there follows:

"Sec. 28. No person shall by printing, writting or in any other way, publish an account of any such illegal lottery, game or device, stating when and where the same is to be drawn, or the prizes therein, or any of them or the price a ticket or share therein, or where any ticket may be obtained therein, or in any way aiding and assisting in the same. Whoever offends against this provision shall be deemed guilty of a misdemeanor; and on conviction be subject to a fine not exceeding one hundred and fifty dollars."

In the second paragraph of the syllabus it was

"Held, that the words 'an account' were modified and controlled in their signification by the language which followed them; that the statute prevented the publication of such accounts only as were intended to operate as advertisements or notices of illegal lotteries, and to aid and assist them; that it did not prevent the publication by any newspaper as a matter of news, or any narrative or statement showing the existence of an illegal lottery and where the same is carried on, for the purpose of denouncing and exposing the same, though such narration or statement may contain any of the several particulars mentioned in the statute and that it does

not therefore conflict with **Sec. 8 of Art. 1 of the Constitution** declaring that every citizen may freely speak, write and publish his sentiments on all subjects."

See also, State v. Sykes, 29 Conn. 225.

It would unduly burden this opinion to pursue the subject at any further length. Upon reason, logic and by the great weight of authority we conclude that the manifest purpose of **§13067 GC**, is to prevent the publication of an account of a lottery, stating therein the place of the drawing, the prizes to be given or the price of the ticket, or showing where a ticket may be purchased.

It is quite obvious, therefore, that the evidence in this case of the mere printing of tickets by a printer without any publication, distribution or advertisement thereof, does not constitute a violation of §13067 GC and therefore the trial court erred prejudicially in finding the defendants guilty under the evidence set forth in the record.

We think it well to observe at this point in view of the constitutional provision of **Article IV, Section 6** which prohibits lotteries and the sale of lottery tickets, or a game of chance in Ohio, the legislature or a municipal council could enact legislation which would, by its terms, make it a crime to print a lottery ticket or to have lottery tickets in one's possession. As the statute now stands neither mechanical printing nor possession "per se" are violative of its provisions. It is not within the province of this court to legislate on these matters and the court cannot by any strained construction include that as a crime which is not made a crime by the statute. The province of the court is "jus dicere" and not "jus dare" to interpret the law, not to make law or to give law.

For the reasons stated, the judgment of the trial court is reversed in each case and final judgment is rendered for defendant appellants. Exc. Order See Journal.

MORGAN, J, SKEEL, J, concur.